UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

STEVEN PIXLEY,

          Debtor.

Case No. 10-62556
Chapter 7
Judge Thomas J. Tucker

_____/

JOYCE McCALLUM,

          Plaintiff,

vs.

STEVEN PIXLEY,

          Defendant.

Adv. No. 10-6665

_____/

**OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding raises collateral estoppel issues. These include the question whether, under Michigan law, a "true default" judgment (*i.e.*, one entered without the defendant having participated in defending the case,) is entitled to any preclusive effect in a later lawsuit between the same parties. The Court answers this question "yes." The remaining issues arise in the Court's application of collateral estoppel to the default judgment in this case.

The case is before the Court on Plaintiff's motion for summary judgment. The motion seeks a determination of nondischargeability of a debt under 11 U.S.C. §§ 523(a)(2) and 523(a)(6), based on the collateral estoppel effect of a state court default judgment. For the reasons stated in this opinion, the Court cannot grant such relief, based on collateral estoppel, and must deny Plaintiff's motion.

## I. Background

In this case, Plaintiff Joyce McCallum seeks a determination that Defendant Debtor Steven Pixley's judgment debt to McCallum is non-dischargeable under 11 U.S.C. § 523(a)(2) for fraud, and under 11 U.S.C. § 523(a)(6) for "willful and malicious injury." The facts relevant to McCallum's summary judgment motion are undisputed.

Eighteen months before Pixley filed his Chapter 7 bankruptcy petition, McCallum obtained a default judgment against Pixley in the Tuscola County, Michigan Circuit Court, in the amount of $157,028.03, plus costs and interest. The default judgment was entered after Pixley failed to answer McCallum's complaint. Pixley did not defend or participate in any way in the state court action, and never appealed or sought relief in the state court from the default judgment.

The default judgment granted judgment for McCallum on all counts of McCallum's state court complaint, including counts for fraud and conversion. In her summary judgment motion, McCallum argues that under the Michigan law of collateral estoppel, which applies here under the federal Full Faith and Credit Statute, 28 U.S.C. § 1728, and related case law,[1] Pixley is precluded from contesting that the debt is nondischargeable under §§ 523(a)(2) and 523(a)(6). Pixley disagrees.

---

[1] *See, e.g., Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991); *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997).

2

## II. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C.

§§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core

proceeding under 11 U.S.C. § 157(b)(2)(I).

## III. Summary judgment standard

Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed.R.Bankr.P.

7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995), the

court elaborated:

> The moving party has the initial burden of proving that no genuine
> issue of material fact exists and that the moving party is entitled to
> judgment as a matter of law. To meet this burden, the moving
> party may rely on any of the evidentiary sources listed in Rule
> 56(c) or may merely rely upon the failure of the nonmoving party
> to produce any evidence which would create a genuine dispute for
> the [trier of fact]. Essentially, a motion for summary judgment is a
> means by which to challenge the opposing party to 'put up or shut
> up' on a critical issue.
>
> If the moving party satisfies its burden, then the burden of going
> forward shifts to the nonmoving party to produce evidence that
> results in a conflict of material fact to be resolved by [the trier of
> fact]. In arriving at a resolution, the court must afford all
> reasonable inferences, and construe the evidence in the light most
> favorable to the nonmoving party. However, if the evidence is
> insufficient to reasonably support a . . . verdict in favor of the
> nonmoving party, the motion for summary judgment will be
> granted. Thus, the mere existence of a scintilla of evidence in
> support of the plaintiff's position will be insufficient; there must be
> evidence on which the [trier of fact] could reasonably find for the
> plaintiff.
> . . .

> Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson* [*v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)], *Celotex* [*Corp. v. Catrett,* 477 U.S. 317 (1986)] and *Matsushita* [*Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir.1999)(relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir.1992)).

## IV. Discussion

### A. General framework of the parties' dispute over collateral estoppel

Collateral estoppel applies in nondischargeability proceedings under the Bankruptcy Code, such as this adversary proceeding. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "Collateral estoppel . . . prevents a party from relitigating issues of fact or law which were necessarily decided by a previous final judgment." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). In determining whether a state court judgment precludes relitigation of issues under the doctrine of collateral estoppel, the Full Faith and Credit Statute, 28 U.S.C. § 1738,[2] requires

---

[2] The Full Faith and Credit Statute provides in relevant part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which

(continued...)

4

bankruptcy courts to "'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985)). If the state courts would not deem the judgment binding under collateral estoppel principles, then the bankruptcy court cannot do so either. But if the state courts would give preclusive effect to the judgment, then the bankruptcy court must also give the judgment preclusive effect, "unless Congress has expressly or impliedly created an exception to § 1738 which ought to apply to the facts before the federal court." *Id.* (citing *Marrese*, 470 U.S. at 386).

In *Calvert*, the Sixth Circuit held that there is no such express or implied exception under § 1738 in dischargeability actions. The court found no indication of such an exception "in the Bankruptcy Code or legislative history." And the court reasoned that there is "no principled distinction between cases where a defendant participates in part in defense of the state court suit and cases where the defendant does not respond at all." 105 F.3d at 322. The court held that "collateral estoppel applies to true default judgments in bankruptcy dischargeability proceedings in those states which would give such judgments that effect." Therefore, the Court must look to the law of Michigan to determine the collateral estoppel effect of the default judgment in this adversary proceeding.

Under Michigan law, the following requirements must be met in order for collateral estoppel to apply:

---

(...continued)

> they are taken.

28 U.S.C. § 1738.

> 1) there is identity of parties across the proceedings,
>
> 2) there was a valid, final judgment in the first proceeding,
>
> 3) the same issue was actually litigated and necessarily determined in the first proceeding, and
>
> 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 485 (B.A.P. 6th Cir. 2010)(citation omitted).

The parties do not dispute that the first, second, and fourth of these requirements are met in this case. Their dispute concerns both components of the third requirement. Pixley argues first that *no* issues were "actually litigated" in the state court case, because he did not participate in that case before the default judgment was entered. And even if the Court rejects this first argument, Pixley argues, not all of the necessary elements for non-dischargeability under §§ 523(a)(2) and 523(a)(6) were both "actually litigated and necessarily determined" by the state court default judgment.

## B. The "true default" issue: was *anything* "actually litigated" in state court?

Courts considering the "actually litigated" element in this context often use the phrase "true default" judgment to refer to a judgment entered by default after "there was no appearance and absolutely no participation in the state court action" by the defendant debtor. *See Vogel v. Kalita* (*In re Kalita*), 202 B.R. 889, 891 (Bankr. W.D. Mich. 1996). This is in contrast to a default judgment entered after the defendant has participated in the defense of the action. Examples of this latter type of default judgment would be where the default judgment was entered as a sanction for a discovery violation, or because the defendant failed to appear for trial, rather than because the defendant failed even to answer the complaint.

6

The Court must decide whether under Michigan law a "true default" judgment meets the "actually litigated" requirement, so that it must be given preclusive effect under the doctrine of collateral estoppel.

The appellate courts of Michigan have not expressly answered this question. Nor has the United States Court of Appeals for the Sixth Circuit answered this question. The federal court cases that have opined on this question have not been unanimous. The most recent court to address the question is the Bankruptcy Appellate Panel for the Sixth Circuit ("B.A.P."), in *Phillips v. Weissert*, cited above.

In a majority opinion and a concurring opinion, the B.A.P. judges in *Phillips* debated this question at length. Two of the three judges held that under Michigan law, no preclusive effect may be given to a default judgment unless there was "substantial participation" by the defendant in the state court case. *See Phillips*, 434 B.R. at 486 (citing six cases decided by the United States Bankruptcy Courts and the United States District Courts from the Eastern and Western Districts of Michigan, but no Michigan state court cases).

In a concurring opinion, the third B.A.P. judge in *Phillips* disagreed, and concluded that Michigan law does give preclusive effect to "true default" judgments. *See id.* at 487, 489-92 (Rhodes, J., concurring).

It is not necessary to repeat here the thorough discussion of Michigan case law presented by the B.A.P. judges in *Phillips*. Having carefully considered that discussion, and the relevant Michigan cases on the subject, this Court concludes that the minority view in *Phillips* is correct.[3]

---

[3] The decisions of the Bankruptcy Appellate Panel may be persuasive, but they are not binding on this Court as a matter of *stare decisis*. *See Barringer v. Eab Leasing* (*In re Barringer*), 244 B.R. 402,

(continued...)

7

The Court holds that under Michigan law a "true default" judgment, like the one in this case, meets Michigan's "actually litigated" requirement, and must be given preclusive effect under the doctrine of collateral estoppel. "Substantial participation" by the defendant in the state court case is not necessary in order for collateral estoppel to apply. No participation is necessary.

The Court concludes that this is how the Michigan Supreme Court would rule on the question. The Court reaches this conclusion based on the arguments and authorities presented in Judge Rhodes's concurring opinion in *Phillips*, which the Court finds persuasive, and also based on the following two points.

First, at least two published Michigan Court of Appeals cases have applied collateral estoppel based on a "true default" judgment (*i.e.*, a default judgment entered after the defendant did not answer, defend, or participate in any way in the case). *See Sahn v. Estate of Brisson*, 204 N.W.2d 692, 693-94 (Mich. Ct. App. 1973); *Braxton v. Litchalk*, 223 N.W.2d 316, 318, 320 (Mich. Ct. App. 1974).[4]

---

[3](...continued)
403-04 (Bankr. E.D. Mich. 1999); *see also Rinard v. Positive Invs., Inc.* (*In re Rinard*), 451 B.R. 12, 20-21 (Bankr. C.D. Calif. 2011).

[4] In the second of these cases, *Braxton v. Litchalk*, a default judgment was entered after the defendant failed to answer the complaint. The default judgment motion was supported by an affidavit. The defendant then moved to set the default judgment aside, and that motion was denied. In finding that the "actually litigated" requirement for collateral estoppel had been met, the Court of Appeals noted its prior decision in the *Sahn* case, and pointed out that "[i]n the case before us the issues were more litigated than in *Sahn*." The *Braxton* court pointed to the affidavit filed in support of the default judgment, the defendant's motion to set aside the default judgment, and the "extensive attention given this matter by the trial court." 223 N.W.2d at 320. The court applied collateral estoppel, but stated the following:

> Our conclusion in this regard should not be construed as going so far as
> to hold that every default judgment, no matter under what circumstances
> it is taken, may result in collateral estoppel, but only that in the instant

(continued...)

Second, the Court is not aware of any published Michigan appellate decision that has refused to apply collateral estoppel to a default judgment for the reason that it was entered without participation in the case by the defaulted defendant.

For these reasons, the Court must give collateral estoppel effect to the state court default judgment in this case. This means that Pixley is precluded from contesting any issue that was both "actually litigated and necessarily determined" by the state court default judgment.

### C. Were all the nondischargeability elements both "actually litigated and necessarily determined" by the state court default judgment?

It is clear, and undisputed, that the existence and amount of Pixley's debt to McCallum were both "actually litigated and necessarily determined" by the default judgment. But as to both § 523(a)(2)(A) and § 523(a)(6), the parties dispute whether all of the elements of non-dischargeability were both "actually litigated and necessarily determined" by the default judgment.

---

[4](...continued)
> case the issues were sufficiently litigated to make the doctrine of collateral estoppel apply.

*Id.* Thus, even though *Braxton* does not go as far as *Sahn* or as the Court's holding in this case, *Braxton* is consistent with the Court's holding in this case. *Braxton* did not overrule or modify *Sahn*, and although it qualified its holding regarding collateral estoppel, as quoted above, the Court is persuaded, for the reasons stated above, and based on the cases and reasoning in the concurring opinion in *Phillips*, that the Michigan Supreme Court would apply collateral estoppel to a true default judgment, even in a case where the defendant did not move to set aside the default judgment.

It is fair to note that in both *Sahn* and *Braxton*, the plaintiff supported its motion for default judgment with affidavits. The same is true in this case — McCallum supported her motion for default judgment in the state court with affidavits, from McCallum and from her attorney, verifying key allegations in McCallum's state court complaint. (*See* Exhibit E to Plaintiff's Motion for Summary Judgment (Docket # 9) at 2 ¶¶ 6, 7 (citing the attached affidavits of Joyce McCallum and Patrick Chatterton) and its exhibits 4 and 5 (the affidavits).)

9

Under Michigan law, an issue is "actually litigated" if it is "put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined." *Phillips*, 434 B.R. at 486 (majority opinion)(*quoting Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986)); *Phillips*, 434 B.R. at 490 (Rhodes, J., concurring) (same). This Court agrees with the concurring opinion in *Phillips* that "[a]n issue may be actually litigated without a trial;" *id.*, and that:

> Under Michigan law, "the entry of a default judgment is equivalent to an admission by the defaulting party as to all of the matters well pleaded." *Sahn v. Brisson's Estate,* 43 Mich.App. 666, 204 N.W.2d 692, 694 (1972); *Lesisko v. Stafford,* 293 Mich. 479, 292 N.W. 376, 377 (1940). **The only matters that are not considered actually litigated are those not pled.**

*Id.* at 492 (Rhodes, J., concurring)(emphasis added).

An issue that is "actually litigated" is also considered to be "necessarily determined" if "it is necessary to the judgment." *See id.* at 493; *see also Rohe Scientific Corp. v. Nat'l Bank of Detroit*, 350 N.W.2d 280, 282 (Mich. Ct. App. 1984)(citation omitted)("Collateral estoppel applies to default judgments; however the default judgment is conclusive only as to those matters essential to support the judgment."); *Detroit Automobile Inter-Insurance Exchange v. Higginbotham*, 290 N.W.2d 414, 418 (Mich. Ct. App. 1980)(same). Whether an "actually litigated" issue is also "necessary to the judgment," or "essential to the judgment," in turn, depends on the elements of the claim or defense involved.

### 1. Section 523(a)(2)(A) and the state court fraud judgment

Applying these principles to McCallum's fraud claim, to determine what was "actually litigated" by the default judgment, the Court must examine what was alleged in McCallum's state

court complaint. To determine what was "necessarily determined" by the default judgment, the Court must examine the necessary elements of fraud under Michigan law. Pixley is deemed to have admitted all allegations *in the complaint* that are *necessary to a judgment for fraud* under Michigan law. All such allegations are deemed to have been "actually litigated and necessarily determined" in McCallum's favor by the default judgment. On the other hand, all *other* allegations are deemed *not* to have been admitted by Pixley, and are deemed *not* to have been "actually litigated and necessarily determined" by the default judgment, insofar as fraud is concerned.

The Court will begin by comparing the elements of fraud under § 523(a)(2)(A) with the elements of fraud under Michigan law. The parties disagree about the elements of fraud under Michigan law. The parties agree that *actual reliance* on an allegedly fraudulent misrepresentation is an element of fraud. But Pixley argues that there is no requirement under Michigan law that such actual reliance be either justifiable or reasonable. McCallum, on the other hand, argues that reasonableness of the reliance is a necessary element for fraud under Michigan law.

### a. The elements of nondischargeability under § 523(a)(2)(A)

Resolving this dispute is important because "justifiable reliance" *is* an element of nondischargeability for fraud under § 523(a)(2)(A). Section 523(a)(2)(A) makes nondischargeable:

> any debt —
> . . .
>
> for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by . . . false pretenses,

11

> a false representation, or actual fraud, other than a statement
> respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The Sixth Circuit has described the elements of nondischargeability

under § 523(a)(2)(A) in this way:

> In order to except a debt from discharge under § 523(a)(2)(A), a
> creditor must prove the following elements: (1) the debtor obtained
> money through a material misrepresentation that, at the time, the
> debtor knew was false or made with gross recklessness as to its
> truth; (2) the debtor intended to deceive the creditor; (3) the
> creditor **justifiably relied** on the false representation; and (4) its
> reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir.

1998)(footnote and citation omitted)(emphasis added).

### b.  The elements of fraud under Michigan law

Under Michigan law, the necessity of proving justifiable or reasonable reliance to

establish fraud has not been so clear.  At least before 2008, there was some reason to question

whether Michigan law includes, as an element of proving fraud, that the claimant's actual

reliance on a false representation must be reasonable or justifiable.  Many Michigan cases stated

the elements of fraud in a way that included actual reliance, but did not expressly require that the

actual reliance be reasonable or justifiable.  In an often-cited case from 1976, for example, the

Michigan Supreme Court listed the elements of fraud this way:

> The elements constituting actionable fraud or misrepresentation are
> well-settled in this jurisdiction. In *Candler v. Heigho,* 208 Mich.
> 115, 121, 175 N.W. 141, 143 (1919), we set forth those elements:
>
> "The general rule is that to constitute actionable fraud it must
> appear: (1) That defendant made a material representation; (2) that
> it was false; (3) that when he made it he knew that it was false, or
> made it recklessly, without any knowledge of its truth, and as a

12

positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815-16 (Mich. 1976). As late as

January 2008, one federal district court decision described the uncertainty on this point of

Michigan law this way:

> **Whether the reliance must be reasonable is an open question under Michigan law.** *Compare Novak v. Nationwide Mut. Ins. Co.*, 235 Mich.App. 675, 690, 599 N.W.2d 546, 554 (1999) (reliance must be reasonable); *Nieves v. Bell Industries, Inc.*, 204 Mich.App. 459, 464, 517 N.W.2d 235, 238 (1994); *State-William Partnership v. Gale*, 169 Mich.App.170, 179, 425 N.W.2d 756, 761 (1988) *with Phinney v. Perlmutter*, 222 Mich.App. 513, 534, 564 N.W.2d 532, 547 (1997) (reliance need not be reasonable). **The Supreme Court of Michigan has not conclusively decided this point.** When discussing the elements of fraud, the Supreme Court of Michigan required simply that "that plaintiff acted in reliance" upon the fraudulent statement, without any discussion of reasonableness. *See Kassab v. Michigan Basic Property Ins. Ass'n*, 441 Mich. 433, 442, 491 N.W.2d 545, 548 (1992), *overruled on other grounds*, *Haynes v. Neshewat*, 477 Mich. 29, 39, 729 N.W.2d 488, 494-95 (2007); *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976); *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919). In another case, the Supreme Court wrote:

>> To defeat an otherwise righteous cause for fraud, by means of allegation that the plaintiff had timely knowledge of the fact he says was falsely represented, proof of negligence on his part will not suffice. The representation and its materiality proven, it must be shown that the plaintiff's knowledge was so informatively complete as to render the allegation of reliance quite as false as the representation itself.

> > *Sautter v. Ney*, 365 Mich. 360, 363-64, 112 N.W.2d 509, 511
> > (1961). However, there can not be reliance if the plaintiff had
> > knowledge of the actual state of things. *Montgomery Ward & Co.*
> > *v. Williams*, 330 Mich. 275, 280, 47 N.W.2d 607, 609-10 (1951).
> > **Although it is an arguably unsettled point of Michigan law, the**
> > **federal courts have assumed that the Michigan Supreme Court**
> > **will require reasonableness of reliance.** *Aron Alan, LLC v.*
> > *Tanfran, Inc.*, 2007 WL 1837843, *3 (6th Cir. Jun. 25, 2007);
> > *Diamond Computer Systems, Inc. v. SBC Communications, Inc.*,
> > 424 F.Supp.2d 970, 984 (E.D.Mich.2006).

*Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, No. 05-74785, 2008 WL 205209, at *14-

15 (E.D. Mich. Jan. 22,  2008)(emphasis added).

But in *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 451-52 (Mich. 2008), the

Michigan Supreme Court held that "reasonable" reliance is a necessary element of fraud.  *Cooper*

involved a claim of fraud by an insured against the insurer under an auto insurance policy.

Initially, the court stated the elements of fraud in the same way the *Hi-Way Motor Co.* case did

— *i.e.*, without expressly stating that reliance must be reasonable — and cited *Hi-Way Motor*

*Co.*.  But then immediately after that, the court added the following:

> > In particular, courts should carefully consider in this context
> > whether insureds can satisfy the reliance factor.  **Insureds must**
> > **"show that any reliance on [the insurer's] representations was**
> > **reasonable."** *Foreman v. Foreman*, 266 Mich. App. 132, 141-142,
> > 701 N.W.2d 167 (2005). Because fraud cannot be "perpetrated
> > upon one who has full knowledge to the contrary of a
> > representation," *Montgomery Ward & Co. v. Williams*, 330 Mich.
> > 275, 284, 47 N.W.2d 607 (1951), insureds' claims that they have
> > **reasonably relied** on misrepresentations that clearly contradict the
> > terms of their insurance policies must fail. One is presumed to have
> > read the terms of his or her insurance policy, *see Van Buren v. St.*
> > *Joseph Co. Village Fire Ins. Co.*, 28 Mich. 398, 408 (1874);
> > therefore, when the insurer has made a statement that clearly
> > conflicts with the terms of the insurance policy, an insured cannot
> > argue that he or she **reasonably relied** on that statement without
> > questioning it in light of the provisions of the policy. *See also*

14

> *McIntyre v. Lyon*, 325 Mich. 167, 174, 37 N.W.2d 903 (1949);
> *Phillips v. Smeekens*, 50 Mich.App. 693, 697, 213 N.W.2d 862
> (1973).

*Id.* (emphasis added). Thus, the *Cooper* case clearly held that "reasonable" reliance is necessary for fraud.

It is not clear why *Cooper* did not include that requirement in initially listing the elements of fraud, and why other Michigan cases, such as the *Hi-Way Motor Co.* case, did not explicitly list reasonable reliance as an element. One way to explain this, perhaps, is to view reasonableness of reliance as an implicit part of the "reliance" element. The first sentence in the excerpt quoted above from *Cooper* at least hints at this. But the statement of the "reliance" element in both *Hi-Way Motor Co.* and *Cooper* seems clearly to refer only to *actual* reliance, without including a requirement that the actual reliance be reasonable — the "reliance" element is stated this way in *Hi-Way Motor Co.*: "(5) that plaintiff acted in reliance upon [the material misrepresentation];" and this way in *Cooper*: "(5) that the [plaintiffs] acted in reliance upon the statement." *Hi-Way Motor Co.*, 247 N.W.2d at 815-16; *Cooper*, 751 N.W.2d at 451.

Alternatively, the reasonableness-of-reliance requirement may be an implicit part of the "materiality" element — *i.e.*, the first element stated in both *Hi-Way Motor Co.* and *Cooper*, that the defendant "made a material representation." It may be that under Michigan law, a representation cannot be deemed to be "material" unless reliance on it was reasonable. There is some support for this view in the Michigan Standard Civil Jury Instructions. Those jury instructions state the elements of fraud using the *Hi-Way Motor Co.* formulation, including the elements that "Defendant made a representation of [a material fact/material facts]," and that "Plaintiff relied on the representation." Michigan Standard Civil Jury Instruction 128.01. The

15

jury instructions do not explicitly include reasonableness of the reliance in the list of elements. *See id.* But the instruction that defines what a "material fact" is states, in pertinent part, that the "[a] material fact must be of enough importance in the matter that a reasonable person would be likely to rely on it." Michigan Standard Civil Jury Instruction 128.10. Arguably, at least, this indicates that the reasonableness-of-reliance requirement is part of the materiality element for fraud.

The Court concludes that the reasonableness-of-reliance requirement for fraud is either a separate element, or is part of the "materiality" element, rather than just an unstated part of the "actual reliance" element. In any case, based on the *Cooper* case, the Court must agree with McCallum that under Michigan law, fraud requires proof of actual reliance that is "reasonable."

The element of "justifiable" reliance under § 523(a)(2)(A) is a less demanding requirement than "reasonable" reliance, which is an element of fraud under § 523(a)(2)(B). *See Willens v. Bones* (*In re Bones*), 395 B.R. 407, 431-32 (Bankr. E.D. Mich. 2008). So establishing that reliance was reasonable, as Michigan law requires for fraud, necessarily also establishes that such reliance was "justifiable" as required under § 523(a)(2)(A).

For these reasons, the Court agrees with the conclusions of those federal cases that have held, without much discussion, that establishing the elements of fraud under Michigan law also establishes the elements of fraud under § 523(a)(2)(A). *See, e.g., Transnation Title Ins. Co. v. Livingston* (*In re Livingston*), 389 B.R. 1, 5 (E.D. Mich. 2008); *Wellinger v. Borton* (*In re Wellinger*), 371 B.R. 249, 253 (E.D. Mich. 2007); *Bldg. Comm'ns, Inc. v. Rahaim* (*In re Rahaim*), 324 B.R. 29, 36 (Bankr. E.D. Mich. 2005); *Robinson v. Callender* (*In re Callender*), 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997).

16

### c. The allegations in McCallum's state court complaint

With this legal backdrop, the Court now must examine the fraud allegations in McCallum's state court complaint. That complaint named as defendants Steven Pixley and Wolverine Coach Builders, LLC.[5] McCallum alleged that she made an agreement with the Defendants in August 2007, that Defendants would convert a Dodge Charger automobile into a limousine for McCallum's business and sell it to McCallum for the price of $59,000.00, payable in monthly installments. But the Defendants sold "Plaintiff's Dodge Charger limousine" to another customer, and then told McCallum of this.[6] In December 2007, the parties modified their contract to provide that Defendants would convert a Chrysler 300 automobile into a limousine for McCallum, in place of the Dodge Charger, for the same contact price of $59,000.00. McCallum made her required monthly payments to the Defendants, toward the $59,000.00 contract price, through March 2008, at which point Defendants had 14 days under the contract to complete the conversion of the Chrysler 300 automobile into a limousine. Under the contract, McCallum was to make a final payment of $10,000.00 upon completion of the limousine and her receipt of a clear title to the vehicle.[7]

McCallum alleged that Defendants never delivered the limousine or title to the limousine to her, despite the fact that McCallum "was and remains ready to tender payment to Defendants in the amount of $10,900.00 to satisfy her financial obligations pursuant to the parties[']

---

[5] A copy of the state court complaint appears in Exhibit A to McCallum's Summary Judgment Motion (Docket # 9), and is cited in this opinion as the "State Court Complaint."

[6] State Court Complaint ¶¶ 10-11.

[7] *Id*. at ¶¶ 12-15.

contract."[8]  McCallum alleged that Defendants breached the contract by failing to deliver the limousine and clear title to the limousine, and that Defendants failed to return any of the money paid by McCallum under the contract, in the amount of $50,600.00.[9]

McCallum alleged that she later discovered "that a lien encumbers the title of the Chrysler 300 automobile which is held by Wells Fargo Bank in the amount of $15,190.03 as creditor, with Defendant Stephen Pixley named as the Debtor thereof."[10]

Next, McCallum alleged that Defendants "at all times were aware of the said lien but refused to inform [McCallum] of the presence of the lien while receiving payments for the conversion of the Chrysler 300," and that Defendants "intentionally misled [McCallum] with respect to the vehicle title."[11]

The State Court Complaint then contains six counts, beginning with "Count I – Breach of Contract." Two of the counts allege fraud, Counts II and VI. Count II, labeled "Fraud/Misrepresentation," incorporates by reference the previous paragraphs of the complaint, and alleges the following:

> 27.    Plaintiff states that the Defendant(s) misrepresented the vehicle title to the Plaintiff.

---

[8] *Id*. at ¶ 16. This amount, $10,900.00, appears inconsistent with the $10,000.00 amount alleged in ¶ 15 of the State Court Complaint. In that paragraph, McCallum alleged that her final payment to Defendants upon completion of the limousine and delivery of title was to be $10,000.00.

[9] *Id*. at ¶ 16. It appears from the State Court Complaint allegations that McCallum still had $10,900.00 left to pay toward the $59,000.00 contract price. She alleged that she paid Defendants a total of $50,600.00. But this included a one-time late fee of $2,500.00, for making her March 2008 monthly payment late. This left a total of $10,900.00 to be paid toward the contract price of $59,000.00. ($50,600.00 - $2,500.00 = $48,100.00; $59,000.00 - $48,100.00 = $10,900.00.) *Id*. at ¶¶ 13, 16.

[10] *Id*. at ¶ 18.

[11] *Id*. at ¶¶ 19-20.

28.     Defendant(s), at all times, were aware of the lien on the vehicle but failed to disclose the lien held on the vehicle by Wells Fargo.

29.     Defendant(s) intended for the Plaintiff to rely on this said misrepresentation. Defendants intended to defraud the Plaintiff with respect to the vehicle.

30.     Plaintiff relied on the Defendant(s)' misrepresentation of the vehicle title to her detriment by paying the Defendant(s) in an amount at or about $50,600.00 for the converted vehicle with a clear title.

31.     As a result of the Defendant(s)' misrepresentation and the Plaintiff's reliance the Plaintiff has suffered damages in excess of $25,000.00.[12]

Count VI, labeled "Constructive Fraud," incorporates by reference the previous paragraphs of the complaint, and alleges the following:

46.     Plaintiff alleges that the Defendant(s) have retained the monies paid under the contract.

47.     Plaintiff alleges that Defendant(s) are not entitled to the funds without the delivery of the vehicle.

48.     Plaintiff alleges that retention of said funds were based on the Defendant(s) tendering a completed vehicle with clear title.

49.     As a direct and proximate result of the Defendant(s) conduct, the Plaintiff has suffered damage in an amount in excess of 25,000.00.[13]

It is unclear what Count VI of the State Court Complaint adds to McCallum's fraud claim in Count II, or what is meant by the label "constructive fraud" in this context. But nowhere in Count II, Count VI, or anywhere else in the State Court Complaint did McCallum allege that her

---

[12] *Id.* at ¶¶ 27-31.

[13] *Id.* at ¶¶ 46-49.

reliance on Pixley's alleged misrepresentation, regarding the title to the Chrysler 300 automobile, was *reasonable*.

### d. Reasonable reliance was not "actually litigated" in the default judgment.

The Complaint alleges actual reliance, in Count II at ¶ 30, in that McCallum relied on the misrepresentation of the vehicle title to her detriment by paying the Defendants "about $50,600.00 for the converted vehicle with a clear title." But there is no allegation that this actual reliance was reasonable. Nor do the allegations in the State Court Complaint *imply* reasonableness of McCallum's reliance. Rather, McCallum alleged at ¶ 18 of her State Court Complaint that after she "inquired and/or investigated the state of the Chrysler 300 automobile," she discovered the Wells Fargo lien. If anything, this implies that McCallum's reliance may not have been reasonable. The reasonableness of a creditor's reliance on a misrepresentation tends to be negated if "there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate;" and if "even minimal investigation would have revealed the inaccuracy of the debtor's representations." *BancBoston Mortgage Corp. v Ledford* (*In re Ledford*), 970 F.2d 1556, 1560 (6th Cir 1992)(citations omitted).

Even if one assumes that the reasonableness-of-reliance requirement under Michigan law is an implied part of the "materiality" element, as discussed above, McCallum's State Court Complaint does not expressly or impliedly allege reasonableness of reliance in this way. Rather,

20

it nowhere alleges that Pixley's misrepresentation regarding the title to the Chrysler 300 vehicle was a "material" representation.[14]

Because McCallum's State Court Complaint did not plead reasonableness of her reliance on Pixley's alleged misrepresentation, that fraud requirement cannot be said to have been "actually litigated" by the default judgment against Pixley. Similarly, the issue whether McCallum's reliance upon Pixley's misrepresentation was "justifiable," as required for non-dischargeability under 11 U.S.C. § 523(a)(2)(A), was not "actually litigated," because that less-demanding standard was not pled in McCallum's State Court Complaint either.

For these reasons, the Court cannot grant summary judgment for McCallum on her non-dischargeability fraud claim under § 523(a)(2), based on collateral estoppel.

### 2. Section 523(a)(6) and the state court conversion judgment

McCallum also seeks summary judgment determining that Pixley's debt to her is non-dischargeable under 11 U.S.C. § 523(a)(6), as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." McCallum seeks summary judgment based on the collateral estoppel effect of her default judgment against Pixley. McCallum's theory is that her State Court Complaint included a claim for conversion, and that the default judgment on that claim precludes Pixley from contesting that the debt is "for willful and malicious injury" under § 523(a)(6).

---

[14] McCallum's failure to allege in the State Court Complaint that Pixley's alleged misrepresentation was material is another reason why McCallum cannot obtain summary judgment based on fraud under 11 U.S.C. § 523(a)(2)(A), based on collateral estoppel. As discussed earlier in this opinion, such materiality is a necessary element of fraud under Michigan law, and a necessary element of nondischargeability under § 523(a)(2)(A). Because materiality was not pled in the State Court Complaint, it must be deemed not to have been "actually litigated" in the default judgment.

21

### a. The elements of nondischargeability under § 523(a)(6)

In order to establish nondischargeability under § 523(a)(6), a creditor must show an injury to person or property by the debtor that is both "willful" and "malicious." "[T]o find a 'willful' injury under § 523(a)(6), [the court] must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004)(citing *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999)). "Under § 523(a)(6), '"[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent.'" *Id.* at 308 (*quoting Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)).

### b. The allegations of McCallum's state court complaint

Count III of McCallum's State Court Complaint alleges conversion by Pixley of the money paid by McCallum under the parties' contract. After incorporating the previous paragraphs of the complaint by reference, Count III alleges:

33.  Plaintiff states that the Defendant(s) knowingly converted and or embezzled the monies paid under the contractual agreement for the Chrysler 300 to the Defendant for their own use.

34.  Pursuant to MCL§600.2919a: (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

     (a) Another person's stealing or embezzling property or converting property to the other person's own use.

35.  Plaintiff states the she made a demand for the vehicle and defendant has not replied to said demand or returned the money paid for the vehicle.

36.     As a result of said embezzlement and conversion, the Plaintiff has suffered damages in excess of $25,000.00.[15]

### c. The Michigan conversion statute

As noted in McCallum's State Court Complaint, the Michigan statute, Mich. Comp. Laws § 600.2919a, provides for treble damages plus costs and attorney fees, against a defendant for converting property to his or her own use.  It states:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) **Another person's stealing or embezzling property or converting property to the other person's own use.**

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

(emphasis added).

McCallum's State Court Complaint alleged, and the default judgment found Pixley liable for, conversion under subpart (1)(a) of § 600.2919a, quoted in bold above.  That part of the statute applies to persons who commit conversion.  Subpart (1)(b) of the statute, also quoted above, does not apply here.  That provision does not apply to the actual converter, but rather applies only to *other* persons, who buy, receive, possess, conceal, or aid in the concealment of stolen, embezzled, or converted property, with knowledge that the property was stolen,

---

[15]  State Court Complaint at ¶¶ 33-36.

23

embezzled, or converted. Subpart (1)(a) was added to § 600.2919a in 2005. Before that amendment, only language similar to what is now in subpart 1(b) was in the statute. "Before its amendment, [Mich. Comp. Laws §] 600.2919a applied only to third parties who aided another's act of conversion or embezzlement, and did not apply to the person who directly converted or embezzled, as it does now." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 242 n.16 (Mich. 2010); *see also Joy & Middlebelt Sunoco, Inc. v. Fushion Oil, Inc.,* No. 04-74870, 2008 WL 283767, at *2 n.2 (E.D. Mich. Jan. 31, 2008)("The old version of [Mich. Comp. Laws §] 600.2919a contained wording very similar to [Mich. Comp. Laws §] 600.2919a(1)(b) of the current statute, but did not contain any of the wording contained in [§] 600.2919a(1)(a) of the current statute."); *Marshall Lasser, PC. v. George*, 651 N.W.2d 158, 162-63 (Mich. Ct. App. 2002)(The pre-amendment version of Mich. Comp. Laws § 600.2919a was "not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property.")[16] The State Court Complaint alleged that Pixley committed conversion, and did not allege that Pixley was a person other than the converter. And the default judgment did not grant judgment under subpart (1)(b) of § 600.2919a. McCallum does not contend otherwise. So only subpart (1)(a) of the statute applies.

---

[16] Both before and after the 2005 amendment, the statute has explicitly required that in order to be liable, a person *other than* the converter, *i.e.*, a person who buys, receives, possesses, conceals, or aids in the concealment of stolen, embezzled, or converted property, must have known that the property was stolen, embezzled or converted. The Michigan Supreme Court interpreted the pre-amendment version of the statute to mean that such knowledge is actual knowledge, not constructive knowledge. *See Echelon Homes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 547, 549 (Mich. 2005); *see also Rib Roof Metal Sys. Inc. v. Nat'l Storage Ctrs. of Redford, Inc.*, No. 07-CV-13731, 2008 WL 4104348, at *13, (E.D. Mich. August 29, 2008)(interpreting subsection (1)(b) of the amended statute to require actual knowledge, citing *Echelon Homes*). Subpart 1(a) of the statute, in contrast, contains no knowledge requirement.

24

### d. McCallum's collateral estoppel argument based on conversion

McCallum's collateral estoppel argument is that her default judgment against Pixley for statutory conversion is preclusive as to all of the elements of nondischargeability under § 523(a)(6)'s "wilful and malicious injury" exception to discharge.

As McCallum's State Court Complaint noted in ¶ 34, quoted above, Mich. Comp. Laws § 600.2919a(1)(a) applies not only to conversion — *i.e.*, "converting" another person's property to one's own use — but also to "stealing" property and to "embezzling" property. And ¶ 36 of the State Court Complaint, quoted above, refers to Pixley's conduct as both "conversion" and "embezzlement." In her summary judgment argument, however, McCallum has disclaimed any reliance of a claim or theory of "stealing" or "embezzlement" under Michigan law, as a basis for nondischargeability under § 523(a)(6). Instead, she bases her collateral estoppel argument only on a claim of conversion under the Michigan statute. At oral argument on McCallum's motion, her counsel agreed that the default judgment on Count III, under the Michigan statute, is limited to conversion, and does not include a judgment for embezzlement.[17] As a result, the Court will confine itself to discussing the conversion theory.

### e. "Actually litigated"

Pixley argues that the § 523(a)(6) elements that McCallum's injury was "willful" and "malicious" were not "actually litigated," because they were not pled in the State Court Complaint. The Court disagrees. The State Court Complaint clearly alleged that Pixley's act of conversion was "willful" (because Pixley desired to cause the consequences of his act or believed

---

[17] The default judgment granted judgment on all counts of McCallum's State Court Complaint, but in referring to Count III, the judgment referred only to "conversion pursuant to MCL § 600.2919a." (*See* Default Judgment, Exhibit F to McCallum's summary judgment motion (Docket # 9), at 1-2.)

that the consequences of his act were substantially certain to result from the act) and that it was "malicious" (because it was done in conscious disregard of his duties or without just cause or excuse). Count III of the State Court Complaint alleged that in keeping all the money that McCallum paid, failing to deliver to McCallum the bargained-for vehicle and clear title to same, and failing to disclose to McCallum that the vehicle was already encumbered by a lien, Pixley:

- knowingly misrepresented the state of the vehicle title

- "intended" to defraud McCallum, and

- "knowingly" converted McCallum's money.[18]

### f. "Necessarily determined" and the elements of conversion in Michigan

A more subtle question is whether the § 523(a)(6) "willful" and "malicious" elements were both "necessarily determined" by the default judgment. As discussed in Part IV-C of this opinion, under Michigan collateral estoppel law an issue is only considered to be "necessarily determined" by a judgment if "it is necessary to the judgment;" that is, if it is "essential to support the judgment." And this, in turn, depends on the elements of the claim or defense involved.

The Michigan conversion statute, Mich. Comp. Laws § 600.2919a, does not define the word "converting" or itself give elements for a conversion claim. Those are supplied by Michigan common law. The Michigan Supreme Court has defined conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dep't of Agriculture v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 244 (Mich. 2010)(footnote and citations omitted); *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d

---

[18] *See* State Court Complaint at ¶¶ 27-29, 33.

600, 606 (Mich. 1992)(footnote and citations omitted). "Conversion may occur when a party

properly in possession of property uses it in an improper way, for an improper purpose, or by

delivering it without authorization to a third party." *Appletree Mktg., L.L.C.*, 779 N.W.2d at 244-

45 (footnote and citations omitted).

The Michigan Supreme Court also has held that the tort of conversion does not require an

intent to violate the property rights of another, or knowledge that one is violating the property

rights of another. Rather, the tort can be committed "unwittingly:"

> In general, [conversion] is viewed as an intentional tort in the sense
> that the converter's actions are wilful, although **the tort can be
> committed unwittingly** if unaware of the plaintiff's outstanding
> property interest.

*Foremost Ins. Co.*, 486 N.W.2d at 606 (emphasis added)(footnote and citations omitted); *see also*

*Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App.

1989); *Warren Tool Co. v. Stephenson*, 161 N.W.2d 133, 147-48 (Mich. Ct. App. 1968).

In a recent decision applying § 600.2919a, the Michigan Court of Appeals described

conversion as "a strict liability tort" and stated:

> The foundation for the action of conversion rests neither in the
> knowledge nor the intent of the defendant. It rests upon the
> unwarranted interference by defendant with the dominion over the
> property of the plaintiff from which injury to the latter results.
> Therefore neither good nor bad faith, neither care nor negligence,
> neither knowledge nor ignorance, are of the gist of the action.

*J. Franklin Interests, L.L.C. v. Mu Meng*, No. 296525, 2011 WL 4501841, at *9 (Mich. Ct. App.

Sept. 29, 2011) (per curiam)(unpublished)(citation omitted).[19]

---

[19] Under Mich. Ct. R. 7.215(C)(1) "[a]n unpublished opinion is not precedentially binding under
the rule of stare decisis." However, Michigan courts may consider unpublished opinions as persuasive

(continued...)

The Court concludes that Pixley's liability for conversion under the Michigan conversion statute — specifically, Mich. Comp. Laws § 600.2919a(1)(a) — did not require an allegation or proof that Pixley intended to violate McCallum's property rights, or that he knowingly did so. As a result, the Court concludes that the allegations in the State Court Complaint that amount to an allegation that the injury to McCallum was "willful" within the meaning of § 523(a)(6) — *i.e.*, that Pixley intended to cause injury to McCallum, or knew that his actions would cause injury to McCallum, or believed that his actions would cause or were substantially certain to cause injury to McCallum — were not "necessary to" or "essential to support" the default judgment for conversion under Michigan law.

### g. Federal court cases on conversion and § 523(a)(6)

The Court acknowledges that there is some case law support for the general proposition that a debt for conversion necessarily is a debt for "willful and malicious injury" under § 523(a)(6). For example, in an unpublished 2004 opinion, the Sixth Circuit stated that:

> **Debts arising out of these types of misconduct satisfy the willful and malicious injury standard**: intentional infliction of emotional distress, malicious prosecution, **conversion**, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises.

*Steier v. Best* (*In re Best*), 109 Fed.Appx. 1, 4, No. 03-5098, 2004 WL 1544066, at *4 (6th Cir. June 30, 2004) (emphasis added)(footnotes and citations omitted). *See also Phillips*, 434 B.R. at

<hr />

[19](...continued)
authority. *See, e.g., People v. Green*, 680 N.W.2d 477, 484 n.5 (Mich. Ct. App. 2004)("Although unpublished opinions are not binding precedent, MCR 7.215(C)(1), we utilize it as a guide and view it as persuasive in light of the limited case law in this area."); *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs.,* 802 N.W.2d 682, 709 & n.5 (Mich. Ct. App. 2010) (Kelly, J., dissenting) (viewing a per curiam unpublished opinion of the Michigan Court of Appeals as "[m]ore persuasive and on point" than a published opinion relied on by the majority).

493 (Rhodes, J., concurring)(quoting *Steier* for this proposition). And recently, a bankruptcy court in Michigan held that "[c]onversion of property clearly falls within the misdeeds contemplated in [§ 523(a)(6)] — willful and malicious injury to persons or property." *Kasishke v. Frank* (*In re Frank*), 425 B.R. 435, 443 (Bankr. W.D. Mich. 2010). But these cases are not determinative in this case.

Several points are important about the Sixth Circuit's *Steier* case. First, that 2004 case was unpublished, which under the Sixth Circuit rules then in effect, meant that it was not binding precedent.[20] Second, in *Steier*, the debt arose under Kentucky law, not Michigan law, and the debt did not involve conversion, so the statement in *Steier* about conversion was dictum. Third, the only authority cited by *Steier* for the proposition that conversion is a willful and malicious injury was an earlier unpublished Sixth Circuit case, in which the debt arose under Ohio law, and in which this issue was not actually raised on appeal. *See Steier*, 109 Fed.Appx. at 4 n.2, 2004

---

[20] *See In re Braddy*, 195 B.R. 365, 370-71 (Bankr. E.D. Mich. 1996)(unpublished Sixth Circuit decisions are not binding as precedent, but can be cited as persuasive authority). In 2004, Sixth Circuit Local Rule 28(g) provided:

> (g) Citation of Unpublished Decisions. Citation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well, such decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court. Such service shall be accomplished by including a copy of the decision in an addendum to the brief.

That rule was later changed, in 2007, and Local Rule 28(f) now says that "[c]itation of unpublished opinions is permitted. FRAP 32.1(b) applies to all such citations." Fed.R.App.P. 32.1, adopted effective December 1, 2006, states that "[a] court may not prohibit or restrict the citation of federal judicial opinions . . . that have been: . . . designated as 'unpublished'" and that were "issued on or after January 1, 2007."

WL 1544066, at *4 n.2 (citing *Staskus v. Gene Weiss' Place for Fitness*, No. 96-4262, 1998 WL 242339 (6th Cir. May 8, 1998)).

With respect to the bankruptcy court's holding in the *Kasishke* case, the court cited no authority in support of its holding, and did not explain why it concluded as it did. And, of course, that bankruptcy court's holding is not binding on this Court. For the reasons explained above, this Court respectfully disagrees with *Kasishke*.

Lastly, there are two older cases requiring some discussion: *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226 (6th Cir. 1991) and *Bonfiglio v. Harkema Assocs. Inc.*, 171 B.R. 245 (E.D. Mich. 1994). In *Vulcan Coals*, the Sixth Circuit held that "the intentional tort of conversion . . . meets the requirements of § 523(a)(6) for nondischargeability when it is alleged (or proven) that the debtor intentionally transferred property to one who is not entitled to it without the authorization or approval of the one entitled to the property." 946 F.2d at 1229 (citation omitted). While it is not entirely clear, this statement by the Sixth Circuit might mean that one who is guilty of conversion necessarily incurs a debt that is "willful" and "malicious" and therefore nondischargeable under § 523(a)(6).

If this is what this statement in *Vulcan Coal* means, however, it is no longer good law. That is because the statement was explicitly based on the Sixth Circuit case law at the time, which held that a "willful" injury under § 523(a)(6) does not require "an act with intent to cause injury." As *Vulcan Coals* discussed, that "stricter standard" had been rejected by the Sixth Circuit, in favor of a willfulness standard that only required that there be "a wrongful act done intentionally, which necessarily produces harm." *See* 946 F.2d at 1228-29 (citing *Perkins v.*

30

*Scharffe*, 817 F.2d 392, 394 (6th Cir.), *cert. denied*, 484 U.S. 853 (1987)).[21]  But that standard

was later rejected by the Supreme Court, and no longer applies.  In 1998, the Supreme Court

held, in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), that "willful" under § 523(a)(6) requires "a

deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."

523 U.S. at 61 (italics in original).  The Sixth Circuit has interpreted *Geiger* to mean that

"willful" under § 523(a)(6) requires "either that (i) the actor desired to cause the consequences of

the act or (ii) the actor believed that the given consequences of his act were substantially certain

to result from the act."  *Trantham*, 304 B.R. at 307(citing *Markowitz v. Campbell* (*In re*

*Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999)).  So *Vulcan Coals* is no longer good law —

"willful" requires more than just an intentional act that causes injury.

    In the second case noted above, *Bonfiglio v. Harkema Assocs., Inc.* the district court held

that "[t]he intentional tort of conversion meets the requirements of 11 U.S.C. § 523(a)(6) for

nondischargeability by virtue of a 'willful and malicious injury.'" 171 B.R. at 248-49 (citation

omitted).  But the court cited only the *Vulcan Coals* case in support of that proposition.  *Vulcan*

*Coals* is no longer good law after the Supreme Court's decision in *Geiger*, as discussed above.

And the same is true of the *Bonfiglio* case, decided in 1994, which also predated *Geiger*.

    For all of these reasons, the issue of whether Pixley's injury to McCallum's property was

"willful" was not "necessarily determined" by the default judgment against Pixley.  As a result,

the Court cannot grant summary judgment for McCallum on her non-dischargeability fraud claim

under § 523(a)(6), based on collateral estoppel.

---

[21]  *Perkins v. Scharffe* was later expressly overruled by the Sixth Circuit, in *Markowitz v.*
*Campbell* (*In re Markowitz*), 190 F.3d 455, 464-65 (6th Cir. 1999).

## V.  Conclusion

For the reasons stated in this opinion, the Court will enter an order denying Plaintiff

Joyce McCallum's motion for summary judgment.

**Signed on October 18, 2011**                    **/s/ Thomas J. Tucker**
                                                  **Thomas J. Tucker**
                                                  **United States Bankruptcy Judge**